The State ex rel. Municipal Construction Equipment Operators' Labor Council et al. *v.* City of Cleveland et al.

[Cite as *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland,* 114 Ohio St.3d 183, 2007-Ohio-3831.]

(No. 2006–2056—Submitted May 1, 2007—Decided August 15, 2007.)

---

**Per Curiam.**

{¶ 1} This is an original action filed by relator, Municipal Construction Equipment Operators' Labor Council, the certified bargaining representative of construction-equipment operators and master mechanics employed by respondent city of Cleveland, Ohio, and certain individual construction-equipment operators and master mechanics employed by Cleveland. Relators request a writ of mandamus to compel respondents, Cleveland, its mayor, and its city council, to pay the construction-equipment operators and master mechanics the difference between the prevailing wage rates and the lower rates they were paid for the period from May 1, 1994, through February 14, 2005, as well as prejudgment interest on these sums. Municipal Construction and the individual relators also request a writ of mandamus to compel Cleveland to credit the construction-equipment operators and master mechanics with sick leave during the period

from October 29, 1980, to February 14, 2005, compensate those employees who missed work due to illness or injury of themselves or a family member to the extent of their accumulated paid sick leave, and pay cash for unused sick-leave hours for those employees who retired from employment with the city during that period. We grant the writ in part and deny it in part.

{¶ 2} Construction-equipment operators and master mechanics employed by the city of Cleveland operate, repair, and maintain heavy construction equipment, including mechanized hoes, loaders, bulldozers, and graders. These employees are referred to as craft employees, building-trade employees, and operating engineers, and they are regular full-time hourly rate employees who are classified as Construction Equipment Operator A, Construction Equipment Operator B, or Master Mechanic.

{¶ 3} In 1979, the Cleveland City Council enacted Ordinance No. 1682–79, which set the hourly wages for various job classifications, including construction-equipment operators and master mechanics. Section 191 of the Cleveland Charter provides that "in the case of employees in those classifications for which the Council provided in 1979 a schedule of compensation in accordance with prevailing wages paid in the building and construction trades, the schedule established by the Council shall be in accordance with the prevailing rates of salary or compensation for such services." Consistent with these provisions, construction-equipment operators and master mechanics were initially paid the prevailing wage rates set forth in certain building agreements. The prevailing wage rate was the sum of the following components: base rate, pension, health and welfare, apprenticeship, and construction industry service program.

*State ex rel. Internatl. Union of Operating Engineers, Local 18 v. Cleveland* (1992), 62 Ohio St.3d 537, 584 N.E.2d 727

{¶ 4} Cleveland considered International Union of Operating Engineers, Local 18, 18A, 18B, 18C, 18RA, AFL–CIO, an employee organization, to be the representative of the city's construction-equipment operators and master mechanics. Before May 1, 1987, the city paid these workers in conformity with the Construction Employers Association Building Agreement with Local 18. Sometime thereafter, however, the city failed to pay the employees the prevailing wages as set forth in the building agreement.

{¶ 5} In 1989, Local 18 filed a complaint in the Court of Appeals for Cuyahoga County for a writ of mandamus to compel the city, its city council, and its mayor, to pay the members of Local 18, who were construction-equipment operators and master mechanics employed by the city, back and future wages in accordance with prevailing wage rates paid in private industry, as set forth in Section 191 of the Cleveland Charter. Local 18 and respondents stipulated that Cleveland had not paid these employees prevailing wages since May 1987.

{¶ 6} The court of appeals denied the writ based on its conclusion that Local 18 had an adequate remedy at law by way of filing a charge of unfair labor practice against Cleveland.

{¶ 7} On appeal, we reversed the judgment of the court of appeals and granted a "writ of mandamus directing respondents to comply with city charter Section 191 by paying back and future wages to the city's construction equipment operators and master mechanics, members of [Local 18] in accordance with prevailing wage rates." *State ex rel. Internatl. Union of Operating Engineers v. Cleveland* (1992), 62 Ohio St.3d 537, 540, 584 N.E.2d 727. We held that because there was no existing collective-bargaining agreement between Cleveland and Local 18, the city had a duty to pay its construction-equipment operators and master mechanics the prevailing wage rates in accordance with Section 191 of the Cleveland Charter. Id. at 540, 584 N.E.2d 727.

### Actions after *Internatl. Union*

{¶ 8} After 1993, Cleveland disputed the prevailing wage rate it was required to pay the construction-equipment operators and master mechanics. Cleveland claimed that it was entitled to deduct certain items from the private-sector prevailing wage rate.

{¶ 9} In 1998, Local 18 filed a motion in the court of appeals for an order for respondents to show cause why they should not be held in contempt of this court's 1992 mandate in *Internatl. Union*, 62 Ohio St.3d 537, 584 N.E.2d 727. Local 18 claimed that Cleveland had failed to pay the city's construction-equipment operators and master mechanics the prevailing wage rate. Local 18 and Cleveland resolved the contempt action by agreeing to a calculation of the prevailing wage rate that included a deduction for the city's pension contributions. The Local 18 president held a meeting to inform the union members how the prevailing wage rate would be calculated. The employees never authorized Local 18 to negotiate a decrease in their wages.

### *Consolo v. Cleveland*, Cuyahoga App. No. 81117, 2002-Ohio-7065, 2002 WL 31839150

{¶ 10} In 2001, certain construction-equipment operators and master mechanics employed by Cleveland filed a complaint in the common pleas court against the city and Local 18 for declaratory judgment and damages. The employees claimed that the city was obligated to pay them the prevailing wage without any offset for retirement benefit payments, that Local 18 was not their certified exclusive bargaining representative, and that Local 18 had failed to adequately represent them. The employees further claimed that their prevailing wage rate consisted of the rate and benefits contained in the building agreements. Local 18 and Cleveland filed motions to dismiss the employees' action, and the common

pleas court dismissed the case because the State Employment Relations Board ("SERB") had exclusive jurisdiction pursuant to R.C. Chapter 4117.

{¶ 11} On appeal, the court of appeals reversed the judgment and held that the common pleas court had erred in dismissing all of the employees' claims because they did not necessarily arise out of or depend upon the collective-bargaining rights conferred by R.C. Chapter 4117. The court of appeals reversed the common pleas court's judgment. *Consolo v. Cleveland,* Cuyahoga App. No. 81117, 2002-Ohio-7065, 2002 WL 31839150.

### Municipal Construction Equipment Operators' Labor Council and Contempt Motion in *Internatl. Union*

{¶ 12} On January 30, 2003, SERB certified relator Municipal Construction Equipment Operators' Labor Council ("Municipal Construction") as the exclusive representative of a bargaining unit including city employees in the classifications of Construction Equipment Operator A, Construction Equipment Operator B, and Master Mechanic.

{¶ 13} In October 2003, Municipal Construction filed a motion in this court in the *Internatl. Union* case for an order for respondents, Cleveland, the city council, and the mayor, to show cause why they should not be held in contempt for refusing to comply with this court's 1992 writ. Municipal Construction claimed that it filed the motion as the successor in interest to Local 18.

{¶ 14} We found that respondents were not in contempt of the 1992 writ. *State ex rel. Internatl. Union of Operating Engineers v. Cleveland,* 102 Ohio St.3d 1419, 2004-Ohio-2003, 807 N.E.2d 365.

### *Consolo v. Cleveland,* 103 Ohio St.3d 362, 2004-Ohio-5389, 815 N.E.2d 1114

{¶ 15} On October 20, 2004, we reversed the court of appeals' judgment in *Consolo* and held that the claims asserted by the Cleveland construction-equipment operators and master mechanics were correctly dismissed by the common pleas court because "[a]ll of the claims asserted by [them] relate to rights created by R.C. Chapter 4117" and "[t]hese claims must be pursued through SERB." *Consolo v. Cleveland,* 103 Ohio St.3d 362, 2004-Ohio-5389, 815 N.E.2d 1114, ¶ 24. More specifically, we held that the city employees' claim that Cleveland had failed to pay the prevailing wage rates was not ripe for review because SERB had exclusive jurisdiction to resolve the claim:

{¶ 16} "If [the employees'] compensation levels were the result of collective bargaining under R.C. Chapter 4117, then the city's charter provisions would be inapplicable. * * * SERB has exclusive jurisdiction to decide whether collective bargaining occurred.

{¶ 17} "If [the employees] prevail before SERB on their claim that their wages did not result from collective bargaining, then the city charter controls." Id. at ¶ 21–22.

## Post-*Consolo* SERB Actions

{¶ 18} In April 2005, Municipal Construction filed a petition requesting that SERB appoint a hearing examiner to adjudicate the issues that we found to be within SERB's exclusive jurisdiction in *Consolo,* 103 Ohio St.3d 362, 2004-Ohio-5389, 815 N.E.2d 1114.

{¶ 19} In July 2006, an administrative law judge recommended a determination on the *Consolo* issues. The city filed exceptions to the recommendation, and Municipal Construction and Local 18 filed responses in support of the recommendation.

{¶ 20} On September 28, 2006, SERB adopted the administrative law judge's recommended determination and found the following:

{¶ 21} 1. Local 18 was not a deemed-certified bargaining agent on or before April 1, 1984, for construction-equipment operators employed by Cleveland.

{¶ 22} 2. Local 18 was not the exclusive representative for construction-equipment operators from 1994 through 1998.

{¶ 23} 3. Cleveland and Local 18 informed construction-equipment operators of the prevailing wage rate agreed upon by the city and the union, but Local 18 did not negotiate a decrease in compensation of the operators with their knowledge or consent.

{¶ 24} 4. No evidence established that Local 18 informed Cleveland that the construction-equipment operators themselves had agreed to a decrease in their compensation.

{¶ 25} 5. The wages of the construction-equipment operators who were appellees in *Consolo* did not result from collective bargaining between Local 18 and the city.

{¶ 26} 6. No evidence established that any benefits package was negotiated or implemented for the construction-equipment operators until February 2005, which was after SERB certified Municipal Construction as their exclusive representative in January 2003.

## Collective–Bargaining Agreement Between
## Municipal Construction and Cleveland

{¶ 27} Following its certification as the exclusive bargaining representative of the construction-equipment operators and master mechanics, Municipal Construction began negotiating an initial collective-bargaining agreement. In 2004, SERB found that Cleveland has committed an unfair labor practice by refusing to

bargain in good faith. SERB ordered the city to bargain in good faith with Municipal Construction. *In re State Emp. Relations Bd. v. Cleveland* (Aug. 5, 2004), SERB No. 2004–004.

{¶ 28} Effective February 2005, Municipal Construction and Cleveland entered into a collective-bargaining agreement, which provided that the agreement "shall address all matters pertaining to hourly wages, and hours, or terms or conditions of employment mutually expressed between the parties." The agreement specified, "In recognition of no wage increases for the period of January 1, 2004 through January 31, 2005, the City shall make a one-time lump sum payment of $2,500.00 to each employee who worked 1,400 or more hours during 2004, on the first regular pay-day after Agreement ratification * * *." Under the agreement, all regular full-time employees would be credited with three days of paid sick leave, and they thereafter would be credited with paid sick leave, of ten hours per month, which is 15 days per year.

{¶ 29} The agreement also contained the following clause:

"Agreement Has No Effect on Pending Litigation

{¶ 30} "This Agreement shall have no effect on or be used by either party to this Agreement, or any other entity, in lawsuits related to any claims for back or future pay or benefits pertaining to prevailing wage rates, or outside contracts, except with respect to a $2,500.00 offset to any judgment against the City for back pay pertaining to the period of January 1, 2004 through January 31, 2005."

{¶ 31} At the time of the agreement, no lawsuit on these matters was pending. The negotiation that led to the collective-bargaining agreement included discussions about back wages, sick leave, and fringe benefits. During negotiations, the city agreed that Municipal Construction and its members could initiate litigation to resolve these claims. The $2,500 lump-sum payment was the amount Cleveland paid in recognition of not giving these employees raises in 2004. The union members ratified the collective-bargaining agreement only after it was represented to them that they were not waiving their claims for back wages at prevailing wage rates and for back credit for paid sick leave.

*State ex rel. Mun. Constr. Equip. Operators' Labor Council*
*v. Cleveland,* Cuyahoga App. No. 86263, 2006-Ohio-4273

{¶ 32} Municipal Construction brought an action in the Court of Appeals for Cuyahoga County against respondents, Cleveland, the city council, and the mayor, for a writ of mandamus to compel the city to pay its members the prevailing wage paid in the building and construction trades from January 2003 (when Municipal Construction became the certified union for the city's construction-equipment operators and master mechanics) to February 2005 (when the collective-bargaining agreement between the union and the city became effective).

Municipal Construction also sought a writ of mandamus to compel the city to provide sick-leave benefits for the period and to pay for unused sick leave for retiree members during the period.

{¶ 33} In August 2006, the court of appeals, in a two-to-one decision, denied the writ. *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland,* Cuyahoga App. No. 86263, 2006-Ohio-4273, 2006 WL 2374408. The court of appeals held that (1) Municipal Construction had an adequate remedy by way of its collective-bargaining agreement to resolve its claims for back wages and sick-leave benefits, (2) res judicata barred Municipal Construction's mandamus action because it raised the same claim in its 2003 contempt action in this court in the *Internatl. Union* case, (3) Municipal Construction's claims were not ripe or not within its jurisdiction until SERB ruled on the issues raised in *Consolo,* and (4) Municipal Construction might have an adequate remedy by way of an action for declaratory judgment.

{¶ 34} Municipal Construction appealed from the court of appeals' judgment to this court in case No. 2006–1688. We affirmed the judgment of the court of appeals because the issues raised by Municipal Construction were not ripe at the time the court of appeals denied the writ. *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland,* 113 Ohio St.3d 480, 2007-Ohio-2452, 866 N.E.2d 1065. We specified in that case that we would examine the remaining claims in the context of this original action, which does not suffer from the same ripeness defect. Id. at ¶ 26.

### Present Mandamus Case

{¶ 35} On November 6, 2006, relators, Municipal Construction and 19 individuals who are or were employed by Cleveland as construction-equipment operators or master mechanics, filed this action for a writ of mandamus to compel respondents, Cleveland, its city council, and its mayor, to pay the city's construction-equipment operators and master mechanics the difference between the actual wages paid to them and the prevailing wages to which they were entitled for the period from May 1, 1994, through February 14, 2005, credit these employees with sick leave at the statutory rate of 4.6 hours for every 80 hours worked from October 29, 1980, to February 14, 2005, compensate those employees who missed work due to illness or injury of themselves or a family member to the extent of their accumulated but unused sick leave at the time of their absence, and pay those employees who retired from employment with the city during the period from October 29, 1980, to February 14, 2005, for one-fourth of the value of their accumulated but unused sick leave. Relators also request attorney fees, prejudgment interest on the wage deficiencies, and postjudgment interest. After respondents filed an answer, the court granted an alternative writ, and the parties

submitted evidence and briefs. *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland,* 112 Ohio St.3d 1438, 2007-Ohio-152, 860 N.E.2d 764.

{¶ 36} This cause is now before the court for our consideration of relators' motion to strike and remove certain exhibits from respondents' evidence, relators' request for oral argument, and the merits of relators' mandamus claims.

### Motion to Strike

{¶ 37} Relators request that certain exhibits contained in respondents' evidence be stricken. "The determination of a motion to strike is vested within the broad discretion of the court." *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 26. In exercising our discretion here, we grant the motion for the following reasons.

{¶ 38} First, the affidavits attached as Exhibits 3 and 4 of respondents' evidence are not made on the personal knowledge of the affiants. Under S.Ct.Prac.R. X(7), affidavits submitted in original actions in this court "shall be made on personal knowledge." See *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.,* 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68, ¶ 20; cf. *State ex rel. Evans v. Blackwell,* 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 32 (construing the comparable S.Ct.Prac.R. X(4)(B) personal-knowledge requirement). In addition, the affidavits are premised upon the theory that Local 18 acted as the exclusive bargaining representative of the construction-equipment operators and master mechanics when it agreed to a pension offset in settling litigation with the city concerning the prevailing wage. As relators observe, SERB has now concluded that Local 18 was not the exclusive bargaining representative for these employees, and the employees did not agree to the offset.

{¶ 39} Second, the remaining challenged exhibits—1, 5, and 7 through 13—are not authenticated. "[E]vidence submitted under the Supreme Court Rules of Practice in an original action in this court should comport with the Rules of Evidence." *State ex rel. Brenders v. Hall* (1995), 71 Ohio St.3d 632, 637, 646 N.E.2d 822, fn. 1. Evidence that is not properly authenticated may be stricken by the court. *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1992), 63 Ohio St.3d 190, 192–193, 586 N.E.2d 114 (court granted motion to strike exhibits in prohibition action because they were not properly authenticated under Evid.R. 902(4)). These exhibits are not self-authenticating pursuant to Evid.R. 902(4) or authenticated by affidavit pursuant to Evid.R. 901(B)(7). Cf. *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 25.

{¶ 40} Finally, respondents filed no timely memorandum in opposition to relators' motion to strike.

{¶ 41} Therefore, we grant relators' motion and strike exhibits 1, 3, 4, 5, and 7 through 13 from respondents' evidence. We will not consider these exhibits in our merits determination.

### Request for Oral Argument

{¶ 42} Relators request oral argument pursuant to S.Ct.Prac.R. IX(2). Oral argument is not required in an original action in this court; instead, oral argument is discretionary in these cases. S.Ct.Prac.R. IX(2)(A).

{¶ 43} "Among the factors we consider in determining whether to grant oral argument in [cases] in which oral argument is not required is whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict between courts of appeals." *Clark v. Connor* (1998), 82 Ohio St.3d 309, 311, 695 N.E.2d 751.

{¶ 44} Oral argument is not warranted here. Relators do not specify in their request any of the foregoing factors. In fact, relators do not provide any rationale in support of their request. This case does not involve any substantial constitutional issue or a conflict between courts of appeals. And although the procedural history is somewhat convoluted, the issues of law and fact are not. Further, the parties' briefs are sufficient to resolve the pertinent legal issues.

{¶ 45} Therefore, we deny relators' request for oral argument and proceed to consider the merits of their mandamus claim.

### Mandamus—In General

{¶ 46} In order to be entitled to the requested writs of mandamus, relators must establish a clear legal right to the wages and benefits, a corresponding clear legal duty on the part of respondents to so provide, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Boccuzzi v. Cuyahoga Cty. Bd. of Commrs.*, 112 Ohio St.3d 438, 2007-Ohio-323, 860 N.E.2d 749, ¶ 13. "It is well settled that a claim by public employees for wages or benefits is actionable in mandamus." *State ex rel. Kabert v. Shaker Hts. City School Dist. Bd. of Edn.* (1997), 78 Ohio St.3d 37, 39, 676 N.E.2d 101.

{¶ 47} Relators' claims are for back wages in accordance with the applicable prevailing wage rates and for sick-leave benefits.

### Prevailing Wage Rates

{¶ 48} Relators initially request a writ of mandamus to compel the city, the city council, and the mayor, to pay the construction-equipment operators and master mechanics the difference between the prevailing wage and the actual wages that were paid to them for the period from May 1, 1994, until the February 2005 effective date of the collective-bargaining agreement executed by Municipal Construction and Cleveland.

{¶ 49} In the absence of a collective-bargaining agreement during this period, Section 191 of the Cleveland Charter required respondents to pay the city's construction-equipment operators and master mechanics in accordance with the prevailing wages in industry. *Internatl. Union,* 62 Ohio St.3d at 539–540, 584 N.E.2d 727. Subsequently, in *Consolo,* 103 Ohio St.3d 362, 2004-Ohio-5389, 815 N.E.2d 1114, at ¶ 22, we specified that if the appellees therein—individual construction-equipment operators and master mechanics employed by Cleveland—"prevail before SERB on their claim that their wages did not result from collective bargaining, then the city charter controls." Because Municipal Construction prevailed before SERB when the board issued Opinion 2006–008, relators are entitled to be paid in accordance with the prevailing wage rates pursuant to Section 191 of the Cleveland Charter.

{¶ 50} At issue here is the appropriate computation of the prevailing wage rates. Respondents assert that the city is entitled to offset from these rates any contributions it makes to provide the employees with certain benefits, including pensions. They assert that this is supported by the definition of "prevailing wages" set forth in R.C. 4115.03(E) and by Ohio Adm.Code 4101:9–4–07. But as we stated in *Consolo,* 103 Ohio St.3d 362, 2004-Ohio-5389, 815 N.E.2d 1114, at ¶ 22, quoting *Craig v. Youngstown* (1954), 162 Ohio St. 215, 55 O.O. 110, 123 N.E.2d 19, syllabus, " 'A city which has adopted a charter under the Home–Rule Amendment to the Ohio Constitution and has adopted civil service regulations consistent with the statutes with respect to civil service is not amenable to the provisions of * * * Section 4115.03 et seq., Revised Code, commonly referred to as the Prevailing Wage Law, with respect to the construction of public improvements with its classified civil service employees.' "

{¶ 51} Moreover, in *State ex rel. Pinzone v. Cleveland* (1973), 34 Ohio St.2d 26, 31, 63 O.O.2d 46, 295 N.E.2d 408, we held that under Section 191 of the Cleveland Charter, the city could not offset fringe benefits for "such items as paid sick leave, greater job security and more steady employment" in computing the prevailing wage rates.

{¶ 52} In addition, the evidence is uncontroverted here that the prevailing wage rates for construction-equipment operators and master mechanics were the sum of the components, including the base rate and payments related to pension, health and welfare, apprenticeship, and the construction industry service program. During the pertinent period, the construction-equipment operators and master mechanics were paid below the applicable prevailing wage rates. Insofar as respondents rely on evidence that has been stricken to assert otherwise, their argument must fail.

{¶ 53} Nevertheless, respondents—in this case or in case No. 2006–1688—further contend that relators' mandamus claim is barred by res judicata, the

presence of an adequate legal remedy at law, and estoppel. These arguments are next addressed.

## Res Judicata

{¶ 54} Respondents assert that relators' prevailing-wage claim is barred in whole or in part because Municipal Construction raised the same claim in its October 2003 contempt motion filed in the *Internatl. Union* case. "Under the doctrine of res judicata, '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *State ex rel. Denton v. Bedinghaus,* 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 14, quoting *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus. "Res judicata bars the litigation of all claims that either were or might have been litigated in a first lawsuit." *Hughes v. Calabrese,* 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 12.

{¶ 55} Here, however, it is evident that the contempt action did not determine the issue of Municipal Construction's and the individual relators' entitlement to be paid at the prevailing wage rates during the pertinent period. As we held in *Consolo,* 103 Ohio St.3d 362, 2004-Ohio-5389, 815 N.E.2d 1114, ¶ 9, the *Internatl. Union* case, 62 Ohio St.3d 537, 584 N.E.2d 727, did not resolve the prevailing-wage claims raised therein, and certain issues required an initial resolution by SERB. Consequently, *Consolo* contemplated additional proceedings following any subsequent, favorable SERB determination. 103 Ohio St.3d 362, 2004-Ohio-5389, 815 N.E.2d 1114, ¶ 22–24. That determination was not made until after the contempt motion in *Internatl. Union* and the court's decision in *Consolo.*

{¶ 56} In addition, Municipal Construction's mandamus claim is not barred by its previous mandamus claim in case No. 2006–1688, in which the claim was denied as premature because when the court of appeals ruled, SERB had not yet made its determination of the issues specified by this court in *Consolo.*

{¶ 57} Therefore, res judicata does not bar relators' mandamus action.

## Adequate Remedy at Law

{¶ 58} Respondents further contend, as they did in case No. 2006–1688, that relators' mandamus claim lacks merit because relators had an adequate remedy at law by way of collective bargaining. Mandamus is not appropriate "when there is a plain and adequate remedy in the ordinary course of the law." R.C. 2731.05. "In order to constitute an adequate remedy, the alternative must be complete, beneficial, and speedy." *State ex rel. Ohio Democratic Party v. Blackwell,* 111 Ohio St.3d 246, 2006-Ohio-5202, 855 N.E.2d 1188, ¶ 40.

{¶ 59} The ability to negotiate a resolution of a dispute concerning past wages and benefits in collective bargaining does not provide a complete, beneficial, and speedy alternative remedy. There is no duty on the part of respondents to resolve these matters in the context of such bargaining. We recognized this in *Internatl. Union*, 62 Ohio St.3d at 539–540, 584 N.E.2d 727, by holding that statutory procedures "for settling disputes arising out of negotiations involving existing or initial collective bargaining agreements" and the possibility of a strike or filing an unfair-labor-practice charge should collective bargaining not resolve a dispute concerning Cleveland's failure to pay prevailing wages to its construction-equipment operators and master mechanics did not constitute an adequate remedy at law precluding entitlement to a writ of mandamus:

{¶ 60} "Neither remedy directly enforces Local 18's right, established by charter provision pursuant to R.C. 4117.10(A), to have its members compensated in accordance with prevailing wages in industry. * * *

{¶ 61} "Local 18's statutory remedies are not adequate and the city charter, in light of R.C. 4117.10(A), identifies a clear legal right to the relief sought and a concomitant clear legal duty to grant that relief."

{¶ 62} Therefore, the availability of collective bargaining did not bar this mandamus action.

### Estoppel: Collective–Bargaining Agreement

{¶ 63} Respondents also claimed in case No. 2006–1688 that relators are estopped from seeking wage and benefit adjustments through mandamus because the February 2005 collective-bargaining agreement between Municipal Construction and Cleveland already provided adjustments for the period from the January 2003 recognition of Municipal Construction as the exclusive bargaining agent for Cleveland's municipal construction-equipment operators and master mechanics until the collective-bargaining agreement became effective.

{¶ 64} "Equitable estoppel precludes recovery when 'one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.'" *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 52, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 34, 641 N.E.2d 188; see, also, *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 20. "[E]quitable estoppel generally requires actual or constructive fraud." *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶ 39; see, also, *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630 ("The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice").

{¶ 65} There is no evidence of fraud on the part of relators here. Although the pertinent section of the collective-bargaining agreement was titled "Agreement Has No Effect on Pending Litigation" and this case was not pending at the time of the agreement, the section text is not limited to pending litigation:

{¶ 66} "This Agreement shall have no effect on or be used by either party to this Agreement, or any other entity, in lawsuits related to any claims for back or future pay or benefits pertaining to prevailing wage rates, or outside contracts, except with respect to a $2,500.00 offset to any judgment against the City for back pay pertaining to the period of January 1, 2004 through January 31, 2005."

{¶ 67} In fact, the uncontroverted evidence is that during the collective-bargaining negotiations, the city agreed that relators could initiate litigation to resolve their claims concerning back wages and sick leave and that it was represented to them that these claims were not waived.

{¶ 68} Consequently, the collective-bargaining agreement does not estop relators' mandamus claim for wages and benefits here. Instead, it merely provides a $2,500 offset to a back pay award for the period from January 1, 2004, through January 31, 2005.

### Prevailing Wages—Conclusion

{¶ 69} Based on the foregoing, relators have established a clear legal right to the relief sought regarding prevailing wages and a concomitant clear legal duty on the part of respondents to grant that relief. Relators have also established the amounts of the hourly rate deficiencies between the actual amounts paid the construction-equipment operators and the master mechanics during the pertinent period. Furthermore, relators lack any adequate remedy in the ordinary course of law to raise this claim. Therefore, relators are entitled to a writ of mandamus to compel respondents to pay the city's construction-equipment operators and master mechanics the difference between the prevailing wage rates and the lower rates they were paid for the period from May 1, 1994, through February 14, 2005, less the collective-bargaining agreement offset of $2,500 for those employees who worked during the period from January 1, 2004, through January 31, 2005.

### Prejudgment Interest

{¶ 70} Relators also request an award of prejudgment interest on the award of back wages. Relators claim entitlement to this award through R.C. 1343.03(A), which provides:

{¶ 71} "[W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of

tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

{¶ 72} The dispute concerning the right of the city's construction-equipment operators and master mechanics to be paid at the prevailing wage rates for the pertinent period is not based upon a written instrument, book account, settlement, verbal contract, or judgment. Instead, relators' entitlement to these wages arose as a matter of law pursuant to Section 191 of the Cleveland Charter. Thus, relators are not entitled to prejudgment interest based on R.C. 1343.03(A). See, e.g., *N. Olmsted v. Eliza Jennings, Inc.* (1993), 91 Ohio App.3d 173, 185–186, 631 N.E.2d 1130; *State ex rel. Carver v. Hull* (1994), 70 Ohio St.3d 570, 579, 639 N.E.2d 1175.

## Sick–Leave Benefits

{¶ 73} Relators next claim a clear legal right to sick-leave credit at the statutory rate of 4.6 hours for every 80 hours worked by the city's construction-equipment operators and master mechanics for the period from October 29, 1980, until the February 2005 effective date of the collective-bargaining agreement, payment to those employees who missed work due to illness or injury of themselves or a family member to the extent of their accumulated but unused sick leave at the time of their absence, and payment to those employees who retired from employment with the city during the period for one-fourth of the value of their accumulated but unused sick leave.

{¶ 74} Relators claim entitlement to these benefits under R.C. 124.38 and 124.39. Under R.C. 124.38, municipal employees are entitled to paid sick leave of 4.6 hours for each 80 hours of service, and the statute further provides:

{¶ 75} "Employees may use sick leave, upon approval of the responsible administrative officer of the employing unit, for absence due to personal illness, pregnancy, injury, exposure to contagious disease that could be communicated to other employees, and illness, injury, or death in the employee's immediate family. Unused sick leave shall be cumulative without limit. When sick leave is used, it shall be deducted from the employee's credit on the basis of one hour for every one hour of absence from previously scheduled work."

{¶ 76} R.C. 124.39(B) provides that political subdivision employees covered by R.C. 124.38 "may elect, at the time of retirement from active service with the political subdivision, and with ten or more years of service with the state, any political subdivision, or any combination thereof, to be paid in cash for one-fourth the value of the employee's accrued but unused sick leave credit."

{¶ 77} The city, however, did not credit its construction-equipment operators and master mechanics with sick leave before the collective-bargaining agreement took effect in February 2005. Instead, Cleveland relied on Section 171.31 of its codified ordinances, which excepts "hourly rate craft employees paid on the basis of building trades prevailing wages" from the general right to sick leave with pay afforded all other "full-time annual rate City employees and all full-time hourly rate employees."

{¶ 78} As relators contend, however, R.C. 124.38 and 124.39 are laws of a general nature that prevail over conflicting municipal ordinances. See, e.g., *S. Euclid Fraternal Order of Police, Lodge 80 v. D'Amico* (1983), 13 Ohio App.3d 46, 13 OBR 49, 468 N.E.2d 735 (R.C. 124.38); *Fraternal Order of Police, Lodge 39 v. E. Cleveland* (1989), 64 Ohio App.3d 421, 581 N.E.2d 1131 (R.C. 124.39). Under Section 34, Article II of the Ohio Constitution, "[l]aws may be passed * * * providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power." Therefore, the statutory right to sick-leave benefits "is a vested right which takes precedence over the authority granted to the city under the Home Rule Amendment." *State ex rel. Reuss v. Cincinnati* (1995), 102 Ohio App.3d 521, 524, 657 N.E.2d 551. Once earned, sick-leave credits become a vested right that cannot be retroactively revoked. *Ebert v. Stark Cty. Bd. of Mental Retardation* (1980), 63 Ohio St.2d 31, 34, 17 O.O.3d 19, 406 N.E.2d 1098.

{¶ 79} Therefore, the conflicting ordinance was ineffective, and the city's municipal construction-equipment operators and master mechanics were entitled to sick-leave benefits under R.C. 124.38 and 124.39 for the pertinent period before the collective-bargaining agreement between Municipal Construction and Cleveland went into effect.

{¶ 80} It is true, as previously stated, that a public-employee claim for wages or benefits is actionable in mandamus. *Kabert*, 78 Ohio St.3d at 39, 676 N.E.2d 101. But even the cases that relators cite for this proposition additionally note that entitlement to the writ is further conditioned upon the relators' establishing the amounts due with certainty. See, e.g., *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn.* (1989), 42 Ohio St.3d 86, 88, 537 N.E.2d 646 ("In order for a writ to issue in such a case the right to relief must be clear and the amount established with certainty"); *State ex rel. Fenske v. McGovern* (1984), 11 Ohio St.3d 129, 131, 11 OBR 426, 464 N.E.2d 525 ("a reinstated public employee may maintain an action in mandamus to recover compensation due him for the time he was wrongfully excluded from employment provided the amount is established with certainty"); *State ex rel. Adkins v. Sobb* (1986), 26 Ohio St.3d 46, 49, 26 OBR 39, 496 N.E.2d 994 ("Because the city admitted the length of prior service of each officer, the amount of vacation leave

attributable to such service is ascertainable with certainty"). That is, "the standard for recovery of such fringe benefits is that the amount sought to be recovered must be established with certainty." *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 120, 9 OBR 342, 459 N.E.2d 520.

{¶ 81} More particularly, in mandamus actions in which public employees have requested past sick-leave benefits, we have held that the amounts of these benefits must be established with the requisite certainty. See *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 65 ("the court of appeals did not err in concluding that [relator's] claim for 82.5 hours of sick-leave credit, which assumed that [relator] would never have taken sick leave during the period of his layoff, had not been established with the requisite certainty"); *State ex rel. Guerrero v. Ferguson* (1981), 68 Ohio St.2d 6, 7, 22 O.O.3d 98, 427 N.E.2d 515 ("since [vacation and sick leave] days cannot be established with certainty, they cannot be credited to relators"); *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 368, 21 O.O.3d 228, 423 N.E.2d 1099 (rejecting claim of reinstated public employee for vacation days, holidays, and sick-leave hours he would have earned because to accept claim, court would have had to conclude that employee was so healthy that he would never have taken a vacation day, that he would have worked on every holiday, and that he would not have taken any sick leave).

{¶ 82} In this case, relators have introduced no evidence regarding the amounts of the various sick-leave benefits to which each construction-equipment operator and master mechanic is entitled. In other words, there is no evidence regarding the sick-leave hours that would have been used by these employees and whether specific retirees would have elected to be paid for accrued but unused sick-leave benefits. This is in contrast to relators' evidence concerning the specific hourly-rate difference between the prevailing wages and the actual wages paid for the pertinent classifications of these employees. Under these circumstances, because relators have not established their entitlement to the requested sick-leave benefits with the required certainty, they are not entitled to the writ. See *Stacy, Guerrero,* and *Crockett.*

### Attorney Fees

{¶ 83} Although relators requested attorney fees in their complaint, they did not include any argument in support of this relief in their merit brief. Relators thus waived this claim. See, e.g., *State ex rel. Moore v. Malone*, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 39 (relator "raised other claims in her complaint, but she waived them by not pursuing these claims in her merit brief").

Postjudgment Interest

{¶ 84} Relators are entitled to postjudgment interest on this court's award as a matter of law. R.C. 1343.03(A); see, also, *State ex rel. Shimola v. Cleveland* (1994), 70 Ohio St.3d 110, 112, 637 N.E.2d 325.

Conclusion

{¶ 85} Therefore, we grant a writ of mandamus to compel respondents to pay the city's construction-equipment operators and master mechanics the difference between the prevailing wage rates and the lower rates they were paid for the period from May 1, 1994, through February 14, 2005, less the collective-bargaining offset of $2,500 for those employees who worked during the period from January 1, 2004, through January 31, 2005. In all other respects, we deny the writ.

Writ granted in part
and denied in part.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Perskey, Shapiro & Arnoff Co., L.P.A., and Stewart D. Roll; Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A., and Patricia M. Ritzert, for relators.

Robert J. Triozzi, Director of Law, Theodora M. Monegan, Chief Assistant Director of Law, and William A. Sweeney, Assistant Director of Law, for respondents.