JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Doris Buck appeals the trial court's decision granting summary judgment in favor of Pine Crest Condominium Association, Group D-E-F ("Pine Crest"). Buck assigns the following errors for our review:
 "I. The trial court committed reversible error when it granted Appellee Pine Crest Condominium Association, Group D-E-F's motion for summary judgment."
 "II. The trial court committed reversible error when it denied Appellant Doris Buck's motion for summary judgment."
 {¶ 2} Having reviewed the record and pertinent law, we reverse the trial court's decision and remand for further proceedings consistent with this opinion. The apposite facts follow.
 {¶ 3} Pine Crest is a condominium association organized under the laws of the State of Ohio, which operates the Pine Crest Condominium Apartments located in Broadview Heights, Ohio. Since 1993, Buck has been the owner of Unit 179F of the Pine Crest Condominium Apartments.
 {¶ 4} On August 17, 2000, Pine Crest filed suit against Buck in Cuyahoga County Common Pleas Court. The suit sought injunction to prohibit Buck from placing three storage containers on her patio and placing signs on her glass door facing outward. The suit also sought an order requiring Buck to pay monthly maintenance fees directly to Pine Crest's treasurer and to compensate Pine Crest for damage to six cork boards located in the common areas. *Page 4 
 {¶ 5} On August 14, 2001, the judge brokered a settlement agreement ("Agreement I") to which Buck and Pine Crest consented. The settlement agreement and subsequent order reads as follows:
 "1. Ms. Buck shall replace the three containers on her patio which now are used for flowers with three containers for flowers sold for such purposes by a retail flower or garden store. The containers shall contain only flowers which do not exceed the present height of the hedges which surround the patio. Pine Crest shall allow the present holly recently planted to attain its normal size.
 2. Ms. Buck shall not place any signs in her windows or doors.
 3. Ms. Buck shall pay her monthly maintenance fee directly to the Treasurer of Pine Crest. Pine Crest shall provide Ms. Buck with a receipt within 48 hours.
 4. Ms. Buck shall pay up to $15 for each of the six cork boards which Pine Crest replaces."[1]
 {¶ 6} On December 29, 2003, Mildred McCarty, the then President of Pine Crest filed suit against Buck in the Parma Municipal Court. The suit sought a temporary and permanent restraining order directing Buck to remove all personal property, including two large flower pots, a chair, and other miscellaneous items from Buck's patio. The suit also sought an order directing Buck to pay $90 for the cost of repairing the six cork boards and $810 in fines for allegedly not paying association fees in the manner prescribed by Pine Crest's Rules and Regulation. *Page 5 
 {¶ 7} The Parma Municipal Court remanded the case to the common pleas court. On May 6, 2004, the case was returned to the docket of the judge who brokered the settlement agreement. On July 27, 2004, the case was removed from the active docket.
 {¶ 8} On March 9, 2005, Pine Crest notified Buck that she owed $190 in late fees associated with her failure to tender her association fees directly to Pine Crest's Treasurer in December 1999, and February 2000 through July 2001. In addition, Pine Crest notified Buck that she owed $490 for non-payment of her monthly maintenance fees for the period June 2000 through July 2001, as well as $90 for the replacement of the six cork boards. Further, Pine Crest notified Buck that the fines totaling $770 were due by March 19, 2005, and that if not received, a certificate lien would be filed.
 {¶ 9} Buck, who had contested the payment at a March 8, 2005, meeting of Pine Crest's Condominium Association, sent a check for $770 by certified mail, of which she wrote that the payment was being "coerced." Pine Crest's manager refused to accept the certified mail containing the payment.
 {¶ 10} On March 24, 2005, Pine Crest filed a Certificate of Lien, with the Cuyahoga County Recorder, in the amount of $930, consisting of $770 in fines, $125 in attorney fees, and $35 in recording fees. *Page 6 
 {¶ 11} On May 25, 2005, Buck filed a complaint against Pine Crest in the Parma Municipal Court seeking to have the lien discharged. On May 31, 2005, at a pre-trial to resolve the issues, the magistrate brokered a second settlement agreement ("Agreement II"). Pursuant to the oral agreement, Buck agreed to dismiss the complaint in return for Pine Crest removing the lien and providing a letter, which Buck could use to rehabilitate and protect her credit rating.
 {¶ 12} Buck dismissed her complaint against Pine Crest. On June 3, 2005, the Parma Municipal Court judge dismissed the action without prejudice. Pine Crest failed to reduce the oral agreement to writing and failed to discharge the lien. On August 25, 2005, in response to Pine Crest's failure to reduce the oral settlement to writing, to discharge the lien, and to provide the letter for purposes of rehabilitating and protecting her credit, Buck filed a motion in the Parma Municipal Court to enforce the oral settlement agreement.
 {¶ 13} In response, Pine Crest filed a motion to dismiss and argued that the Parma Municipal Court lacked subject matter jurisdiction. Buck subsequently withdrew the motion to enforce the oral settlement agreement. On October 27, 2005, the Parma Municipal Court dismissed the case with prejudice.
 {¶ 14} On May 24, 2006, Buck filed a complaint in Cuyahoga County Common Pleas Court against Pine Crest seeking declaratory judgment, injunctive relief, and monetary damages. Buck specifically sought to have the certificate of lien *Page 7 
discharged and damages arising from affixing the lien. Buck also alleged that Pine Crest abused the lien process. In addition, Buck sought damages for the infringement of her exclusive right to use and enjoy the appurtenances of her unit. Further, Buck sought damages for breach of the first settlement agree-ment and for Pine Crest's failure to honor the oral agreement entered into at the Parma Municipal Court.
 {¶ 15} On June 4, 2007, and June 21, 2007, Buck and Pine Crest filed their respective motions for summary judgment. On July 27, 2007, the trial court denied Buck's motion for summary judgment. On November 26, 2007, the trial court granted Pine Crest's motion for summary judgment.
 Summary Judgment {¶ 16} In the first assigned error, Buck argues the trial court erred in granting summary judgment in favor of Pine Crest. We agree.
 {¶ 17} We review an appeal from summary judgment under a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[3] Under Civ. R. 56, summary judgment is appropriate when: (1) no *Page 8 
genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party.[4]
 {¶ 18} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[5] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[6]
 {¶ 19} In the instant case, the record reflects an acrimonious relationship between the parties resulting in legal battles spanning approximately eight years. At the core of the dispute, which led to the instant appeal, is the certificate of lien that Pine Crest filed against Buck's property. We conclude on the evidence before us that Pine Crest incorrectly filed the certificate of lien against Buck's property.
 {¶ 20} A review of the record indicates that in July 2000, Buck began the practice of depositing her monthly maintenance fees directly into Pine Crest's account with National City Bank. The record indicates direct deposits of $143 in *Page 9 
payment of Buck's maintenance fees on each of the following dates: July 31, 2000, September 1, 2000, October 2, 2000, November 1, 2000, December 1, 2000, January 2, 2001, February 2, 2001, March 2, 2001, April 2, 2001, and May 1, 2001. Buck directly deposited $163 into Pine Crest's account on June 1, 2001 and on July 2, 2001.
 {¶ 21} In August 2000, when Pine Crest filed suit to prohibit Buck from using storage containers as planters, Pine Crest also alleged Buck failed to pay her monthly maintenance fees to the treasurer of the condominium association. Of note, Pine Crest's complaint did not allege that the association did not get the fees, nor did they allege that the fees were late. The evidence conclusively indicates that Buck had timely paid her monthly fees, albeit not in the manner prescribed by the rules.
 {¶ 22} On August 14, 2001, when Agreement I was reached and journalized into a consent order, the order required Buck to begin paying her monthly maintenance fees directly to the treasurer. The record before us indicates that Buck has complied with that obligation under Agreement I. Thus, when Pine Crest assessed late fees relating to Buck's prior practice of directly depositing her monthly payment into the association's account, they were incorrect. In addition, when Pine Crest used the alleged late fees as a predicate for filing the certificate of lien, they were incorrect. *Page 10 
 {¶ 23} Further, Agreement I bars Pine Crest from attempting to collect the alleged late fees from Buck's prior practice of directly depositing her monthly maintenance fees into the association's bank account. Under the doctrine of res judicata, a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.[7] Res judicata bars the litigation of all claims that either were or might have been litigated in a first lawsuit.[8]
 {¶ 24} Thus, any claim arising out of Pine Crest's first suit which led to Agreement I, is barred.
 {¶ 25} Moreover, the record reflects that prior to Pine Crest filing the certificate of lien, Buck attempted to pay the alleged fees. The record reveals that Buck sent a check in the amount of $770 to the president of the association via certified mail. On the memo line of the check, Buck indicated that the payment was coerced. However, the record reveals that the president of the association refused to accept the mail. *Page 11 
 {¶ 26} Pine Crest subsequently filed the certificate of lien, then entered into an oral agreement in the Parma Municipal Court, when Buck sought to have the lien discharged and then failed to honor the agreement.
 {¶ 27} Based on the foregoing, we conclude that the certificate of lien filed by Pine Crest was invalid. The record fully establishes that Buck had timely paid her monthly maintenance fees for the period for which the late fees are now being assessed. Pine Crest's action in filing the certificate of lien and their subsequent actions amounts to bad faith. The trial court erred in granting summary judgment in Pine Crest's favor. Accordingly, we sustain Buck's first assigned error.
 {¶ 28} Our disposition of Buck's first assigned error renders the second assigned error moot.[9]
Judgment reversed and remanded.
It is, therefore, considered that said appellant recover of said appellee her costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 12 
JAMES J. SWEENEY, A.J., and MARY EILEEN KILBANE, J., CONCUR
[1] Settlement Agreement.
[2] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[3] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[4] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[6] Id. at 293.
[7] State ex rel. Denton v. Bedinghaus, 98 Ohio St.3d 298,2003-Ohio-861, citing Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379,1995-Ohio-331, syllabus.
[8] State ex rel. Mun. Constr. Equip. Operators' Labor Council v.City of Cleveland, 114 Ohio St.3d 183, 2007-Ohio-3831, citing Hughes v.Calabrese, 95 Ohio St.3d 334, 2002-Ohio-2217.
[9] App. R. 12(A)(1)(C). *Page 1