[Cite as *Buck v. Pine Crest Condominium Assn. Group D-E-F*, 2012-Ohio-5722.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   97861

### DORIS BUCK

PLAINTIFF-APPELLANT

vs.

### PINE CREST CONDOMINIUM ASSOCIATION GROUP D-E-F

DEFENDANT-APPELLEE

JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court

Case No. CV-592386

**BEFORE:**    Boyle, P.J., Cooney, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    December 6, 2012

**FOR APPELLANT**

Doris Buck, pro se
501 Tollis Parkway
Apartment 179F
Broadview Heights, Ohio    44147


**ATTORNEYS FOR APPELLEE**

Ronald B. Greenspan
1370 Ontario Street
700 Standard Building
Cleveland, Ohio    44113-1701

Robert J. Koeth
Ann E. Leo
Koeth, Rice & Leo Co., L.P.A.
1280 West Third Street
Third Floor
Cleveland, Ohio    44113

MARY J. BOYLE, P.J.:

{¶1} Plaintiff-appellant, Doris Buck, appeals the trial court's decision granting the partial motion for summary judgment of defendant-appellee, Pine Crest Condominium Association Group D-E-F ("Pine Crest"). She also appeals the amount of attorney fees that the trial court awarded her in damages. We affirm.

Procedural History and Facts

{¶2} Pine Crest is a condominium association that operates the Pine Crest Condominium Apartments located in Broadview Heights, Ohio. Since 1993, Buck has been the owner of Unit 179F of the Pine Crest Condominium Apartments. For over the past decade, the parties have had an acrimonious relationship resulting in several legal disputes over their interpretation and the enforcement of Pine Crest's rules and regulations. This court in a prior appeal of the underlying case, *Buck v. Pine Crest Condominium Assn.*, 8th Dist. No. 90813, 2008-Ohio-5349 ("*Buck I*"), has already detailed the procedural history and facts as follows.

{¶3} The parties' first dispute dates back to August 2000. Pine Crest filed suit against Buck in Cuyahoga County Common Pleas Court, seeking an injunction to prohibit Buck from placing three storage containers on her patio and placing signs on her glass door facing outward. The suit also sought an order requiring Buck to pay monthly maintenance fees directly to Pine Crest's treasurer and to compensate Pine Crest for damage to six

corkboards located in the common areas.    The case was ultimately resolved through a settlement agreement ("*Agreement I*").    *Id.* at ¶ 4-5.

{¶4}    Nearly three years later, Pine Crest again filed suit against Buck in Parma Municipal Court, seeking a restraining order directing Buck to remove all personal property from her patio.    The suit also sought an order directing Buck to pay $90 for the cost of repairing six corkboards and $810 in fines for allegedly not paying association fees in the manner prescribed by Pine Crest's rules and regulations.    This case was remanded to the common pleas court and returned to the docket of the judge who brokered *Agreement I.*    On July 27, 2004, the case was removed from the active docket.    *Id.* at ¶ 6-7.

{¶5}    On March 9, 2005, Pine Crest notified Buck that she owed fines totaling $770, which included late fees and maintenance fees, as well as $90 for the replacement of the six corkboards.    Pine Crest stated that the fines were due by March 19, 2005, and that if not received, a certification of lien would be filed.    Although Buck contested the payment, she nevertheless sent a check for $770 by certified mail prior to the March 19, 2005 deadline. Pine Crest's manager, however, refused to accept the certified mail containing the payment. *Id.* at ¶ 8-9.

{¶6}    On March 24, 2005, Pine Crest filed a certificate of lien on Buck's property in the amount of $930, consisting of $770 in fines, $125 in attorney fees, and $35 in recording fees.    *Id.* at ¶ 10.

{¶7} The next day, Buck filed a complaint against Pine Crest in the Parma Municipal Court seeking to have the lien discharged. With the assistance of a magistrate, the parties reached a second settlement agreement ("*Agreement II*"). Under the oral settlement agreement, Buck agreed to dismiss the complaint in return for Pine Crest removing the lien and providing a letter that Buck could use to rehabilitate and protect her credit rating. *Id.* at ¶ 11.

{¶8} Buck dismissed her complaint against Pine Crest. On June 3, 2005, the Parma Municipal Court judge dismissed the action without prejudice. Pine Crest, however, did not (1) reduce the oral settlement agreement to writing, (2) discharge the lien, or (3) provide the letter for purposes of rehabilitating and protecting Buck's credit. Consequently, Buck filed a motion in Parma Municipal Court to enforce the oral settlement agreement. *Id.* at ¶ 12.

{¶9} Pine Crest filed a motion to dismiss and argued that the Parma Municipal Court lacked subject matter jurisdiction. Buck subsequently withdrew her motion to enforce the oral settlement agreement. On October 27, 2005, the Parma Municipal Court dismissed the case with prejudice. *Id.* at ¶ 13.

{¶10} Buck never filed a motion to vacate the Parma Municipal Court's final judgment dismissing the case with prejudice. Nor did she appeal the decision. Instead, on May 24, 2006, Buck filed the underlying action in the common pleas court, seeking

declaratory judgment, injunctive relief, and monetary damages. Buck asserted eight counts, alleging the following: (1) Pine Crest placed an invalid lien on her property; (2) Pine Crest violated R.C. 2929.13(G) by asserting false statements to secure the lien; (3) Pine Crest filed the lien with the intent to harass and retaliate against her for exercising her rights; (4) Pine Crest's actions constitute a "prima facie tort"; (5) Pine Crest has infringed on her exclusive and irrevocable license to use and enjoy the appurtenances to her unit, namely, the patio; (6) Pine Crest breached its oral agreement regarding the corkboards; (7) Pine Crest breached the oral settlement agreement reached in Parma Municipal Court (*Agreement II*); and (8) Pine Crest's changes in the rules regarding planting of flowers and use of patios is unreasonable.

{¶11} Both parties filed motions for summary judgment. The trial court granted Pine Crest's motion and denied Buck's motion. Buck appealed. *See Buck I.* This court reversed the grant of summary judgment because issues resolved in the first settlement agreement, including late fees for maintenance payments, were barred by res judicata. This court determined that the lien was filed improperly and in bad faith because "the record fully establishes that Buck had timely paid her monthly maintenance fees for the period for which the late fees are now being assessed." *Buck I* at ¶ 26.

{¶12} Following our reversal and remand, Pine Crest filed a satisfaction of lien, dated November 20, 2008. Two years later, on December 21, 2010, Pine Crest provided letters to all three credit reporting bureaus on behalf of Buck. Pine Crest further filed a corrected release of lien, dated December 22, 2010, stating that the satisfaction of lien filed on November 20, 2008 "should reflect that the lien was discharged and released per the agreement of the parties."

{¶13} Pine Crest filed another motion for summary judgment and supplemental motion on April 26, 2010, arguing, among other things, that seven of the eight counts in the complaint were resolved by the previous two settlement agreements. Pine Crest maintained that all of Buck's claims were extinguished by virtue of the second settlement agreement except for Count 7 of the complaint — breach of the oral settlement agreement reached in Parma Municipal Court, i.e., *Agreement II.* Pine Crest further admitted, however, that by

virtue of its breach of the second settlement agreement, Buck was entitled to an award of attorney fees.

{¶14} The trial court agreed and granted summary judgment for Pine Crest on all the counts except for Count 7. The trial court then set the matter for a hearing to determine Buck's damages as a result of Pine Crest's breach.

{¶15} After having a full hearing, the trial court awarded Buck attorney fees in the amount of $62,782, which represents (1) $675 for fees earned by Attorney David Brown (Parma Municipal Court); (2) $39,825 earned by Attorney David Kovach from 2005-2008; and (3) $22,281 earned by Attorney David Kovach from 2009-2011. The trial court further awarded Buck prejudgment interest in the amount of $11,693.26. The trial court, however, did not award Buck the additional $25,000 that she was seeking arising out of fees following our remand in *Buck I.* Although the trial court awarded Buck $22,281 for this period, it found that the additional fees incurred were earned litigating extinguished claims and, therefore, would not be reimbursed. Therefore, the trial court awarded Buck a total of all of $74,475.26 in damages, which included substantially all the attorney fees that she was seeking, plus prejudgment interest.

{¶16} Buck now appeals, raising the following three assignments of error:

[I.]   The trial court committed reversible error when it granted appellee Pine Crest Condominium, Group D-E-F's second motion for summary judgment.

[II.] The trial court erred when it reduced attorney fee award to appellant Doris Buck.

[III.] The trial court erred when it denied additional, hearing-related attorney fees to appellant Doris Buck.

Summary Judgment and Res Judicata

{¶17} In her first assignment of error, Buck argues that the trial court erred in granting Pine Crest's second motion for summary judgment following our remand. She contends that these claims — Counts 1 through 6 and Count 8 of her complaint — are not barred by the doctrine of res judicata.

{¶18} We review an appeal from summary judgment under a de novo standard. *Baiko v. Mays*, 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

{¶19} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine the following:

(1) no genuine issue as to any material fact remains to be litigated,

(2) the moving party is entitled to judgment as a matter of law, and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.

*State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).

{¶20} Here, the only issue is whether the trial court properly determined as a matter of law that the doctrine of res judicata barred all but the breach of the settlement agreement. We find that it did.

{¶21} Under the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the same transaction or occurrence that was the subject matter of a previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). The Ohio Supreme Court has identified four elements necessary to bar a claim under the doctrine of res judicata: (1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) the second action involves the same parties or their privies as the first; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the transaction or occurrence that was the subject matter of the previous action. *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 84.

{¶22} The record reveals that the claims raised in this case, with the exception of Count 7, i.e., the breach of the oral settlement agreement, have already been raised and litigated in the Parma Municipal Court action. Buck's amended complaint filed in the Parma Municipal Court on May 25, 2005, included the same claims that she raises in this case. Specifically, Buck attacked the lien that Pine Crest placed on her property, alleging, inter alia, that (1) the lien was invalid; (2) Pine Crest made knowingly false statements in the filing of the lien; and (3) that Pine Crest is responsible for any damage to her credit as a result of the improperly placed lien. Buck further sought a declaration that Pine Crest violated the terms of *Agreement I*, that she has an exclusive and irrevocable license to use her patio, and that she is not subject to any newly enacted rules and regulations.

{¶23} Thus, the only new allegation in the current complaint that was neither raised nor could have been raised is Count 7 for breach of the oral settlement agreement (*Agreement II*) in the Parma Municipal Court case — the sole count that the trial court properly resolved on its merits. As for the other counts, they have already been litigated and resolved in the prior litigation by the same parties. We, therefore, conclude that the trial court properly held that they were barred by the doctrine of res judicata.

{¶24} The first assignment of error is overruled.

<u>Attorney Fees</u>

{¶25} In her second and third assignments of error, Buck argues that the trial court erred in the amount of attorney fees that it awarded. Specifically, Buck argues that she should have recovered the full amount that she incurred and that the trial court should have further awarded her those fees incurred in connection to the hearing. We disagree.

{¶26} A party seeking an award of attorney fees has the burden of demonstrating the reasonable value of such services. *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio*, 10th Dist. No. 02AP-454, 2003-Ohio-3334, ¶ 145. *See also Enyart v. Columbus Metro. Area Community Action Org.*, 115 Ohio App.3d 348, 358, 685 N.E.2d 550 (10th Dist.1996) (the burden of demonstrating the reasonableness of the work hours devoted to the case rests with the attorney seeking the award).

{¶27} Ordinarily, the award of attorney fees is within the discretion of the trial court. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). Absent a clear abuse of that discretion, the lower court's decision should not be reversed. *Mobberly v. Hendricks*, 98 Ohio App.3d 839, 649 N.E.2d 1247 (9th Dist.1994). An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *Berger v. Mayfield Hts.*, 265 F.3d 399, 402 (6th Cir.2001).

> An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of will, of a determination, made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and

grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias.

*Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶28} Based on the record before us, we simply cannot say that the trial court abused its discretion. While we sympathize with Buck's plight in obtaining the enforcement of a settlement agreement reached years ago, we cannot say that the trial court abused its discretion in its award of damages. There is no doubt that Pine Crest breached the settlement agreement reached in 2005 and that Buck should be entitled to recover the attorney fees incurred in connection with enforcing the agreement. The trial court, however, awarded Buck all of those fees that it found to be incurred in connection with that claim. To the extent that the trial court did not award her more fees, those fees were not reasonably incurred.

{¶29} In its decision awarding attorney fees, the trial court reasoned as follows:

The bills Plaintiff submitted to the Court verify that Plaintiff devoted time to all the claims throughout the litigation, not just the breach of the settlement agreement. Although it is apparent that a great deal of time was expended by Plaintiff pursuing extinguished claims, the Court is unwilling to reduce the amount of attorney fees by $32,000 as suggested by Defendant.

According to the record, from 2005 through 2008, Attorney Kovach billed Plaintiff $39,825.50. From 2009 through March 2011, Plaintiff was billed $47,281.50. Almost all of the $47,281.50 was earned after the Court of Appeals dismissed all but one of Plaintiff's claims. Despite the Court of Appeals ruling, Attorney Kovach continued to pursue dismissed claims.

The Defendant insists this warrants a finding that $32,000 in fees were unreasonable. However, this ignores the fact that Plaintiff spent valuable hours preparing the case for trial, attending pretrial and settlement conferences and writing pretrial motions.

After analyzing the bills and taking into account the amount of time devoted to matters relative to the Breach of Settlement claims, the Court determines that $25,000.00 of Attorney Kovach's fees were earned litigating extinguished claims and therefore are unreasonable.

{¶30} Buck fails to demonstrate how this decision constitutes an abuse of discretion. Indeed, the trial court's decision is supported by the record. We find that it fairly compensates Buck for Pine Crest's breach of the settlement agreement.

{¶31} As for Buck's additional claim that the trial court erred in failing to grant her subsequent motion for additional attorney fees and to hold another hearing, the record reflects that the trial court gave Buck the opportunity to supplement her request for attorney fees following the hearing, but that she failed to do so. Buck's failure to timely supplement the record with evidence of attorney fees incurred in connection to the hearing and expert fees waived her right to recover such fees. Under such circumstances, we cannot say that the trial court abused its discretion in refusing to award Buck additional attorney fees and expenses. *See Hikmet v. Turkoglu*, 10th Dist. No. 08AP-4021, 2009-Ohio-6477.

{¶32} The second and third assignments of error are overruled.

{¶33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
MARY EILEEN KILBANE, J., CONCUR