[Cite as *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017-Ohio-384.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104162**

# CLEVELAND TOWN CENTER, L.L.C.

PLAINTIFF-APPELLANT/
CROSS-APPELLEE

vs.

# FINANCIAL EXCHANGE COMPANY OF OHIO, INC.

DEFENDANT-APPELLEE/
CROSS-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-837122

**BEFORE:** Keough, A.J., E.A. Gallagher, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** February 2, 2017

**ATTORNEY FOR APPELLANT**

Douglas E. Bloom
Bloom Law Group, L.L.C.
24460 Aurora Road
Bedford Heights, Ohio 44146


**ATTORNEYS FOR APPELLEE**

Timothy J. Gallagher
Christopher J. Weber
Kegler, Brown, Hill & Ritter Co., L.P.A.
600 Superior Avenue, Suite 2510
Cleveland, Ohio 44114

KATHLEEN ANN KEOUGH, A.J.:

{¶1}   Plaintiff-appellant, Cleveland Town Center, L.L.C. ("CTC"), appeals from the trial court's judgment that granted summary judgment to defendant-appellee, Financial Exchange Company of Ohio, Inc. ("FECO").  FECO cross-appeals from the trial court's judgment that failed to award FECO attorney and expert witness fees incurred in preparing for and attending a hearing regarding the amount of attorney fees and court costs to be awarded FECO upon the trial court's grant of summary judgment. We affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶2} In 1992, FECO entered into a lease agreement to rent commercial property in a shopping center located at 14333 Euclid Avenue in Cleveland.  Throughout the lease period, FECO operated a Money Mart store at the property, offering, among other things, check cashing services and the purchase of precious metals.

{¶3}   The parties' agreement was amended and extended in 2002 and again in 2005.  CTC acquired the property in 2006.  In October 2010, FECO and CTC entered into a lease amendment that extended the lease for an additional two years (until October 31, 2012) at the base monthly rent of $1600 per month, and gave FECO the option to renew the lease for two additional five-year periods.  In April 2012, FECO notified CTC that it was exercising one of its options to renew the lease agreement for another five years, until October 31, 2017.

**{¶4}** It is undisputed that the lease agreement contained the following exclusivity provision:

> The Landlord covenants that so long as the Tenant is in actual possession of the Premises and is carrying on its business in the Premises in accordance with the terms of the Lease, the Landlord will not, at any time during the initial Term of the Lease or any extension thereof, permit any other tenant or occupant of the center to carry on or offer the services of check cashing, cash wire services, sale of money orders, cash advances, consumer loans, Western Union Agent (other than a chartered bank or trust company), purchase of precious metals, pawning, or income tax preparation, e-filing, and discounting.

> In the event that the Tenant produces a documented occurrence of another tenant in breach of above said Exclusivity, the Tenant, at its entire discretion, may either terminate the Lease on thirty (30) days written notice to the Landlord, or the Tenant may choose to conduct business at a base rental rate of $800.00 per month until the end of the term or until such time the tenant breaching the above said Exclusivity vacates the center.

**{¶5}** On November 8, 2011, FECO provided written notice to CTC that "other tenants at the property are cashing checks and providing income tax preparation, e-filing and discounting" in violation of the lease agreement, such that FECO was exercising its right to reduce its base monthly rental rate to $800. Thereafter, from November 2011 through August 2014, FECO paid and CTC accepted rental payments at a monthly base rate of $800.

**{¶6}** On July 28, 2014, FECO gave CTC written notice of its election to terminate the lease agreement as of August 31, 2014, because another tenant at the property was purchasing precious metals, in violation of the lease agreement.

**{¶7}** CTC subsequently brought suit against FECO for breach of contract. It claimed that FECO had breached the lease agreement by (1) failing to pay the full rental

amount of $1600 per month from November 2011 through August 2014; and (2) failing to make any rental payments after August 2014. FECO denied the allegations of the complaint and brought a counterclaim for declaratory judgment that (1) it had not breached the lease agreement, (2) CTC was not entitled to the relief sought in its complaint, and (3) FECO was entitled to recover its attorney fees and costs incurred in the lawsuit pursuant to Section 22 of the lease agreement.

{¶8} Both parties subsequently filed motions for summary judgment. The trial court granted FECO's motion and denied CTC's motion. In its written decision, that trial court found that in 2011, FECO notified CTC that other tenants on the property were cashing checks and providing income tax preparation, e-filing and discounting, in violation of the lease agreement, and that FECO properly elected at that time to pay a reduced base monthly rent of $800 as provided by the lease agreement.

{¶9} The trial court further found that FECO's notice to CTC in 2014 that another tenant was selling precious metals on the property was a report of a new violation that triggered for that violation an election of remedies — either reduced rent or termination of the lease — and that FECO's decision to terminate the lease was within its prerogative. Accordingly, the trial court found that FECO was not obligated to pay rent or any other charges under the lease after August 31, 2014.

{¶10} The trial court further found that as the prevailing party, FECO was entitled under the lease agreement to recover its reasonable attorney fees and court costs. The court set a date for an evidentiary hearing to determine the attorney fees and costs, but

ordered that "[i]f the parties stipulate to this amount they should notify the court of such stipulation before October 15 and the hearing will be canceled."

{¶11} FECO's counsel sent a letter to CTC's counsel with a copy of its invoice to FECO for services rendered through the date of the trial court's decision, and asked if CTC would stipulate to the attorney fees in order to avoid a hearing. The letter advised that should CTC not stipulate, FECO would seek to recover the additional attorney fees and costs associated with any hearing to recover its fees. CTC did not stipulate, and thereafter the trial court conducted an evidentiary hearing to determine the amount of FECO's reasonable attorney fees and costs.

{¶12} At the hearing, FECO presented the testimony of its attorney, along with supporting evidence, to establish the attorney fees and costs FECO incurred from the commencement of the action through the issuance of the trial court's decision. FECO also presented expert testimony to establish that the attorney fees and expenses were reasonable and necessarily incurred. CTC did not present any evidence at the hearing, and did not object to any of FECO's evidence.

{¶13} After the hearing, FECO submitted a supplemental memorandum in support of its recovery of $5,107.06 in attorney fees and $2,351.68 in expert fees incurred in preparing for and appearing at the hearing. The trial court subsequently ordered that FECO was entitled to recover $16,170.86 in attorney fees and costs. The trial court's order did not include an award for attorney fees incurred after the trial court's decision

through the date of the hearing on attorney fees, nor any award for expert witness fees. This appeal and cross-appeal followed.

## II. Law and Analysis

### A. CTC's Appeal

{¶14} In its assignment of error, CTC asserts that the trial court erred in granting summary judgment to FECO on its counterclaim for declaratory judgment.

{¶15} Under Civ.R. 56(C), summary judgment is appropriate when (1) there is a genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 NE.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R.56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

{¶16} On a motion for summary judgment, the moving party carries the initial burden of identifying specific facts in the record that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the

reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id*. at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id*.

{¶17} The trial court found that FECO advised CTC in 2011 that other tenants at the property were violating the exclusivity provision by cashing checks and providing income tax preparation, e-filing and discounting. It further found that in 2014, FECO advised CTC that another tenant was in violation of the exclusivity provision because it was buying and selling precious metals. The trial court found that this was a new violation of the exclusivity provision — not another violation by the same tenant — and therefore, under the exclusivity provision, FECO was entitled to elect termination of the lease agreement as its remedy. The trial court found that FECO had therefore not breached the agreement, and it granted summary judgment to FECO on its claim for declaratory judgment. On appeal, CTC contends that the trial court erred in granting summary judgment because FECO did not provide sufficient evidence of a new violation to trigger an election of remedies under the exclusivity provision.

{¶18} CTC's argument is without merit. The sworn affidavit of Brian McAndrews, FECO's senior vice-president, was attached to FECO's motion for summary judgment. In his affidavit, McAndrews averred that on November 8, 2011, FECO gave CTC written notice that other tenants at the property were performing check cashing services in violation of the exclusivity provision of the lease agreement. A copy of the 2011 letter was attached as an exhibit to McAndrews's affidavit. In the letter, FECO advised CTC

that other tenants at the property were "cashing checks and providing income tax preparation, e-filing and discounting" in violation of the exclusivity provision.

{¶19} McAndrews further averred that on July 28, 2014, FECO gave CTC written notice that "another tenant" was performing services that fell within the scope of the exclusivity provision. A copy of the July 28, 2014 letter was attached as an exhibit to McAndrews's affidavit. In this letter, McAndrews advised CTC that other tenants at the property were providing "income tax preparation, e-filing and purchase of precious metals" and directed CTC to a picture attached to the letter. The undated picture showed two tenants at the property located immediately adjacent to Money Mart; one provided tax preparation services; the other offered "cash for gold."

{¶20} CTC objects on appeal that the "only evidence" of the new violation was the picture, and asserts that the picture is insufficient to establish a new violation because "there is no evidence in the record of who took this picture, when the picture was taken, and what this picture was taken of." CTC contends that this "scant evidence," coupled with its assertion that this was not a new but merely an ongoing violation since 2011, demonstrates that FECO's evidence of a new violation was insufficient to demonstrate there were no genuine issues of material fact for trial.

{¶21} CTC waived any argument on appeal regarding the authenticity or adequacy of the photograph, however, because it raised no objection to the photograph in the trial court. In its combined motion for summary judgment and brief in opposition to FECO's motion for summary judgment, CTC made no reference whatsoever to the photograph.

Instead, it argued only that the exclusivity provision gave FECO an option to either pay reduced rent or terminate the lease, and that because FECO had chosen in 2011 to pay reduced monthly rent, it could not now elect to terminate the lease. CTC made no argument about the photograph. It is well established that a party cannot raise new arguments and legal issues for the first time on appeal, and that failure to raise an issue before the trial court results in waiver of that issue for appellate purposes. *Bank of Am., N.A. v. Michko*, 8th Dist. Cuyahoga No. 101513, 2015-Ohio-3137, ¶ 28.

{¶22} Moreover, CTC offered no evidence whatsoever in the trial court to rebut FECO's evidence that another tenant was purchasing precious metals, and that this was a new violation, separate from the prior conduct that triggered FECO's right to pay reduced monthly rent under the exclusivity provision. In response to FECO's motion for summary judgment, CTC's burden was to set forth specific facts showing that there was a genuine issue for trial. *See* Civ.R. 56(E). It failed to do so. Accordingly, because the only evidence in the record showed that there was a documented occurrence of a new violation of the exclusivity provision, thereby triggering FECO's right to terminate the lease, the trial court did not err in granting summary judgment against CTC and in favor of FECO.

{¶23} CTC's assignment of error is overruled.

B.     FECO's Cross-Appeal

{¶24} The trial court awarded FECO $16,170.86 in attorney fees and costs under Section 22 of the lease agreement, which provides that "[i]f any legal action is instituted

to enforce this lease or any part thereof, the prevailing parties shall be entitled to recover reasonable attorney fees and court costs." In its cross-appeal, FECO asserts the trial court erred in not awarding it attorney fees and expert witness fees incurred in preparing for and presenting at the hearing on attorney fees. FECO requests that this court reverse the trial court's judgment regarding attorney fees and remand with instructions that the trial court award it $5,107.05 in attorney fees and expenses incurred from the date of the trial court's judgment granting summary judgment and the hearing on attorney fees, and $3,251.58 in expert witness costs incurred by FECO to prosecute its claim for attorney fees. We decline to do so.

{¶25} A party seeking an award of attorney fees has the burden of demonstrating the reasonable value of such services. *Buck v. Pine Crest Condo. Assn. Group D-E-F*, 8th Dist. Cuyahoga No. 97861, 2012-Ohio-5722, ¶ 26. Ordinarily, the award of attorney fees is within the discretion of the trial court. *Id.* Absent a clear abuse of that discretion, the lower court's decision should be affirmed. *Id.*

{¶26} An abuse of discretion involves far more than a difference in opinion. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). An abuse of discretion occurs when the result is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias." *Id.* In this case, we cannot say that the trial court abused its discretion in declining to award prehearing attorney and expert witness fees.

**{¶27}** With respect to the expert witness fees, the lease agreement provides that the prevailing party is entitled to recover "reasonable attorney fees and court costs." It makes no provision for the recovery of expert witness fees. Moreover, an expert witness was not necessary to substantiate the reasonableness of FECO's fees. FECO's lawyer testified at the hearing that he has 23 years of litigation experience, and in his opinion, the fees and costs incurred in this case were reasonable, necessary, and appropriate. This testimony was competent, and the trial court could judge the reasonableness of the attorney fees from this testimony. Accordingly, the trial court did not abuse its discretion in not awarding FECO expert witness fees.

**{¶28}** With respect to the prehearing attorney fees, FECO refers us to cases in which courts have held that it is error not to award attorney fees incurred in preparing for a hearing on the reasonableness of attorney fees. However, all of the cases cited by FECO involve attorney fees awarded by statute, such as the Fair Labor Standards Act and the Civil Rights Attorneys' Fees Awards Act. As stated by this court in *Turner v. Progressive Corp.*, 140 Ohio App.3d 112, 746 N.E.2d 702 (8th Dist.2000), failure in such cases to compensate an attorney for the time spent expended on the attorney fee application "would not comport with the purpose behind most statutory fee authorizations, viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies." *Id*. at 118, citing *Gagne v. Maher*, 594 F.2d 336, 334 (2d Cir.1979).

**{¶29}** This case, however, does not involve a statutory fee authorization nor an indigent client vindicating a legislative policy. Moreover, as the trial court found, FECO could have provided the court at the hearing with an accounting of the time and fees incurred in preparing for the hearing (which it obviously knew), thereby eliminating the need for another hearing on its supplemental request. Accordingly, we cannot conclude that although the trial court awarded FECO $16,170.86 in attorney fees, it abused its discretion in declining to award FECO additional attorney fees for prehearing preparation and participation.

**{¶30}** FECO's cross-assignment of error on its cross-appeal is overruled.

**{¶31}** Judgment affirmed.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR