[Cite as *Naiman v. Cleveland Elec. Illum., Co.*, 2025-Ohio-1060.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

NAIMAN RICHMOND PROPERTIES,  :
LTD., ET AL.,

      Plaintiffs-Appellants,  :

                  No. 113926

      v.  :

CLEVELAND ELECTRIC  :
ILLUMINATING COMPANY,

      Defendant-Appellee.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  March 27, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-982857

---

### *Appearances:*

Singerman, Mills, Desberg & Kauntz Co., L.P.A., and
Michael R. Stavnicky, *for appellants*.

Roetzel & Andress, LPA, and Stephen W. Funk, *for appellee*.

MICHAEL JOHN RYAN, J.:

{¶ 1} The plaintiffs-appellants in this case are Naiman Richmond Properties, Ltd. and Naiman Richmond Properties, LLC (collectively "Naiman") and they appeal from the trial court's April 26, 2024 judgment granting the motion for summary judgment of the defendant-appellee Cleveland Electric Illuminating Company ("CEI"). After a thorough review of the facts and pertinent law, we affirm the trial court's decision to grant summary judgment in favor of CEI, albeit partly on a slightly different ground.

**Procedural and Factual History**

{¶ 2} Naiman initiated this refiled action in July 2023.[1] Naiman is the owner of parcels of property located on Richmond Road in Bedford Heights, Ohio, and CEI is the provider of electrical services for Bedford Heights; buildings are located on the property. At issue in this case are three of CEI's poles on one of Naiman's parcels; the poles were installed in 1969, 1971, and 1983, respectively.

{¶ 3} The record demonstrates that the subject three poles are connected to a portion of a distribution line that runs alongside Naiman's property. That distribution line is connected to a distribution line located within the right of way on Richmond Road and to a CEI substation located adjacent to the property.

{¶ 4} According to Naiman, in 2018, it discovered that the power lines were in violation of the National Electric Safety Code ("NESC") after the equipment of

---

[1] The original action, Cuyahoga C.P. No. CV-22-961677, was voluntarily dismissed by Naiman.

workers it contracted with came in contact with the poles and lines and burned the roof and side of one of Naiman's building. Naiman requested CEI to move the distribution line. CEI informed Naiman that under its "tariff" with the Public Utilities Commission of Ohio ("PUCO"), it would be required to bill Naiman for the relocation cost, so as not to pass the cost along to other ratepayers; CEI estimated the cost at $63,000. Naiman refused to pay, and this litigation ensued.

{¶ 5} According to Naiman's complaint, CEI "has installed and continues to install, upgrade and modify power lines, poles and transformers on the Property, some of which are directly adjacent to the buildings on the Property." Complaint at ¶ 5. Further, according to Naiman, "The lines, polls and transformers have been modified and upgraded for increased electrical capacity and are a continuing/absolute nuisance endangering the Plaintiffs' building and any of their workers or agents." *Id.* at ¶ 6. Naiman alleged that the placement of the lines, poles, and transformers, as well as the increased electrical capacity, violated the NESC. *Id.* at ¶ 14. On these allegations, Naiman sought relief based on the following legal theories: continuing nuisance (Count 1); absolute nuisance (Count 2); and continuing trespass (Count 3).

{¶ 6} CEI answered Naiman's complaint and denied the substantive allegations. CEI asserted several affirmative defenses, including that Naiman's claims were barred because CEI had express, implied, and/or prescriptive easements for the poles and wires at issue.

{¶ 7} CEI filed a motion for summary judgment on all of Naiman's claims. In support of its motion, CEI relied, in part, on the following Civ.R. 56 evidence: (1) the affidavit, deposition testimony, and reports of its expert, Timothy Denzler ("Denzler"); (2) deposition testimony of the owner of the business on the subject property, Jack Naiman; (3) deposition testimony of Naiman's expert, Richard Huberty ("Huberty"); (4) Naiman's answers to CEI's requests for admissions; and (5) the 1966, 2003, and 2021 deeds for the subject property.

{¶ 8} In opposition to CEI's motion, Naiman relied, in part, on the following Civ.R. 56 evidence: (1) Jack Naiman's affidavit; (2) Denzler's deposition testimony; and (3) the affidavit and report of its expert, Huberty.

{¶ 9} CEI filed a "motion in limine" to exclude Huberty's testimony (Naiman's expert) and a motion to strike Jack Naiman's affidavit. The court denied the motions; however, in regard to Jack Naiman's affidavit, the court found that the averments in paragraphs five through nine were not based on personal knowledge and disregarded them. Naiman filed a "motion in limine" to exclude Denzler's testimony (CEI's expert), which the trial court denied.[2]

{¶ 10} The trial court issued its judgment granting CEI's summary judgment motion in April 2024. In its judgment, the trial court found that the pole installed in 1969 was done so under an express easement granted in the 1966 deed. Regarding the 1971 and 1983 poles, the trial court found that CEI had a prescriptive

_____

[2] The trial court treated the parties' "motions in limine" as motions to strike.

easement for them. The trial court went on to consider whether CEI's easements constituted a nuisance and found that they did not. Accordingly, the trial court granted CEI summary judgment on all of Naiman's claims. Naiman appeals and assigns the following errors for our review:

I. The trial court erred in granting summary judgment in favor of defendant.

II. The trial court erred because even if there was an easement the defendant has the legal duty to maintain the easement.

III. The trial court erred because an easement cannot be a nuisance.

IV. The trial court erred in finding a prescriptive easement because eminent domain is used for utilities.

V. The trial court erred in striking portions of plaintiff's affidavit.

**Law and Analysis**

**Summary Judgment Standard**

{¶ 11} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 14, citing *Hudson v. Petrosurance, Inc.*, 2010-Ohio-4505, ¶ 29. Summary judgment is appropriate "only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Argabrite* at *id.*, citing *M.H. v. Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12; Civ.R. 56(C). In a de novo review, this court affords no deference to the trial court's decision and independently reviews the

record to determine whether the denial of summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

**Express Easement; 1966 Deed; Prescriptive Easement**

{¶ 12} An easement is an interest in the land of another that entitles the owner of the easement — the dominant estate — to a limited use of the land in which the interest exists — the servient estate. *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231 (1968); *Yeager v. Tuning*, 79 Ohio St. 121, 124 (1908); *Colburn v. Maynard*, 111 Ohio App.3d 246, 253 (4th Dist. 1996). The creation of an easement may be express, implied, or by prescription. *Trattar v. Rausch*, 154 Ohio St. 286 (1950), paragraph two of the syllabus.

{¶ 13} In order to create an express easement, the owner of the servient property must grant or convey to the owner of the dominant property a right to use or benefit from his estate. *Yeager* at *id.* An express easement may be created by grant, or by reservation or exception in a deed. *Gateway Park, LLC v. Ferrous Realty Ltd.*, 2008-Ohio-6161, ¶ 29 (8th Dist.). Once an easement becomes part of the chain of title of the dominant property, such easement passes with the transfer of the property. *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 2005-Ohio-3398, ¶ 50 (11th Dist.).

{¶ 14} The 1966 recorded deed provides in pertinent part as follows:

EXCEPTING THEREFROM, HOWEVER, the pole and wire line with appurtenances located on and across the northerly portion of this aforedescribed premises, and reserving unto said Grantors, their successors and assigns, a permanent easement or right to continue to

use, maintain, repair and rebuild said pole and wire line with appurtenances on and across said premises.

{¶ 15} The trial court found, based on the 1966 deed language referencing a singular pole, that CEI has an express easement for the first, 1969, pole. Naiman contends that the trial court erred because the language in the deed relates to an easement on the northernly line of Naiman's property, but according to Naiman, "the lines, poles and transformers at issue are not on the northernly line of the property." Rather, "[t]he poles and lines at issue cut across Naiman's property from the south to the north in the opposite direction referenced in the purported easement."

{¶ 16} In response, CEI noted that although Jack Naiman admitted in his deposition testimony that the deed applied to the property, he averred in his affidavit that CEI did not have an easement.[3] According to his deposition testimony, the pole and wire line referenced in the deed refer to a different distribution line that runs along Richmond Road. It is CEI's contention that the distribution line that runs along Richmond Road is not on Naiman's property but rather it is on the public right-of-way. When questioned by CEI if he had "any reason to believe that the line along Richmond Road is not in the public right-of-way," Jack responded, "I don't know." Jack was unable to identify that there was any other distribution line — other than one at issue — on the Naiman property.

---

[3] Jack Naiman averred that CEI did not have an easement several times in his affidavit, including in both paragraphs that the trial court said it was disregarding and at least once in a paragraph the trial court presumably considered, i.e., paragraph 15 ("Defendant has no easement or right to be on Plaintiff's property.").

{¶ 17} Other than Jack's conclusory averment in his affidavit that CEI does not have an easement, he does not aver about the location of the subject line; that is, he does not aver, as Naiman contends in its appellate brief, that "the lines, poles and transformers at issue are not on the northernly line of the property."

{¶ 18} Upon our de novo review, we find that CEI failed to establish that it has an express easement for any of the poles at issue here and thus the trial court erred in finding that it did as to the first pole. The 1966 deed language referred to an express easement on the northernly portion of the property. CEI relied on exhibit No. 10 to its motion for summary judgment as purported evidence of the location of the various poles. The exhibit is an aerial map of the subject property, but it does not indicate direction. The trial court seemed to rely on the dates the poles were installed and the reference in the deed to a singular pole, rather than on the location. Specifically, the trial court found that

> [n]one of the three poles were on the property in 1966. The Deed language plainly refers to one pole being permitted. Therefore, the Court finds that the 1969 pole is covered by an express easement. The language refers to a single pole, however, the second and third pole are not covered by the express easement for a single pole created in 1966.

{¶ 19} In other words, the trial court found that because the 1969 pole was the first pole on the property, it was subject to an express easement. But without an indication that the pole was on the northernly portion of the property, we find that the trial court erred.

{¶ 20} CEI contends that even if it did not have an express easement, it had a prescriptive easement. Naiman contends that CEI cannot have both an express

easement and a prescriptive easement. It is true that "a party cannot have a prescriptive easement, which requires an adverse use of the property, when the property owner has expressly granted permission to use her [or his] property." *Ramunno v. Murphy*, 2017-Ohio-998, ¶ 39 (7th Dist.). It is also true, however, that a party can raise alternative theories in case one theory is not accepted by the trial court. *See, e.g., Eisenbarth v. Reusser*, 2014-Ohio-3792, ¶ 38 (7th Dist.); *Kamposek v. Johnson*, 2005-Ohio-344, ¶ 26 (11th Dist.).

{¶ 21} "'Because review of summary judgment is de novo, a reviewing court may affirm a trial court's decision for different reasons.'" *Gilles v. Donegan*, 2024-Ohio-6023, ¶ 48 (8th Dist.), quoting *Robinson v. Vehicle Acceptance Corp.*, 2017-Ohio-6886, ¶ 16 (8th Dist.), citing *Mosley v. Cuyahoga Cty. Bd. of Mental Retardation*, 2011-Ohio-3072, ¶ 52 (8th Dist.), citing *Cordray v. Internatl. Preparatory School*, 2010-Ohio-6136, ¶ 31.

{¶ 22} As stated, the trial court found that only the 1969 pole on Naiman's property was under an express easement granted by the 1966 deed; the court found that the other poles were on Naiman's property under a prescriptive easement. We affirm the trial court's ultimate decision that the poles were on Naiman's property pursuant to an easement, but on different reasons than the trial court. Specifically, we find that all three poles were subject to a prescriptive easement.

{¶ 23} "Prescription is the acquisition of an easement, over the property of another, through adverse use of that property." *Crawford v. Matthews*, 1998 Ohio App. LEXIS 4492, *7 ( 4th Dist. Sept. 21, 1998). Under Ohio law, in order to obtain

a prescriptive easement, a landowner using adjacent property must prove, by clear and convincing evidence, that such use was open, notorious, adverse to the neighbor's property rights, continuous, and in place for at least twenty one years. *Williams v. Phillips*, 1999 Ohio App. LEXIS 2693, *5-6 (5th Dist. June 3, 1999).

{¶ 24} In its responses to CEI's requests for admissions, Naiman admitted the following: (1) that the subject poles and overhead wires were located on the property when Naiman acquired the property (admission no. 6); (2) the subject poles and overhead wires were physically observable when Naiman acquired the property (admission no. 7); and (3) it has no evidence to dispute that the subject poles and wires on or adjacent to the property have been used by CEI for the distribution of electricity for more than 21 years (admission no. 9).

{¶ 25} The evidence demonstrated that all three poles and wires at issue fall under the definition of a prescriptive easement. Because, as discussed, the poles cannot be subject to both an express and prescriptive easement, we affirm the trial court's finding that CEI had an easement for all three poles but based on different reasoning. That is, we find that all three poles were subject to a prescriptive easement. A cause of action in trespass will not lie when the purported trespasser holds an easement to the property on which it is purportedly trespassing. *See Blashinsky v. Topazio*, 1987 Ohio App. LEXIS 6445, *9 (11th Dist. Apr. 17, 1987) (a cause of action in trespass cannot be maintained where an easement permits the entrance upon the property). Thus, Count 3 of Naiman's complaint for continuing trespass failed as a matter of law.

**Nuisance**

{¶ 26} Finding that CEI had easements for its poles to be on Naiman's property, we now consider whether, as alleged by Naiman, the easements constituted a nuisance.

{¶ 27} A nuisance is the wrongful invasion of a legal right or interest. *Taylor v. Cincinnati*, 143 Ohio St. 426, 436 (1944). A nuisance can be either public or private. A public nuisance is "'an unreasonable interference with a right common to the general public.'" *Hardin v. Naughton*, 2013-Ohio-1549 ¶ 18 (8th Dist.), quoting *Brown v. Scioto Cty. Bd. Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist. 1993). A private nuisance is a "'nontrespassory invasion of another's interest in the private use and enjoyment of land.'" *Hardin* at *id.*, quoting *Brown* at *id.*

{¶ 28} A public or private nuisance may further be classified as either an absolute or a qualified nuisance. *Taylor* at paragraphs one and three of the syllabus. Naiman claimed that CEI created an absolute nuisance on its property. An absolute nuisance is

> a distinct civil wrong arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his [or her] legal rights; the unlawfully doing of anything or the permitting of anything under one's control or direction to be done, which results in injury to another . . . .

*Id.* at paragraph two of the syllabus.

{¶ 29} Strict liability attaches to an absolute nuisance, notwithstanding the absence of fault, because the wrongful act is so inherently dangerous that it cannot be conducted without damaging someone else's property rights, no matter the care utilized. *Hardin* at ¶ 19.

{¶ 30} Naiman's theory of its nuisance claim is that the subject lines and wires were not in compliance with the NESC. In support of its claim, Naiman submitted an affidavit and expert report of Richard Huberty. In his affidavit, Huberty averred that he is a licensed electrician, inspector, and public power lineman with 40 years of experience. Based on his experience, along with his inspection of the lines and systems at issue, Huberty opined to a "reasonable degree of certainty" that CEI "violated [the NESC] and that the lines and poles are a danger."

{¶ 31} In his report, Huberty found that the current version of the NESC requires 12.5 feet vertical clearance from a building and 7.5 feet horizontal clearance from a building, and that CEI's "electrical systems, lines and poles violate the NESC Code and are a danger."

{¶ 32} Huberty "strongly disagree[d]" that CEI was "somehow grandfathered into compliance with the 1961 6th Edition of the NESC Code." He explained that "the electrical system, lines and poles violate the 1961 NESC Code. I measured the distance from the side of the building to the electrical system and the electrical system is within 29 inches in some areas. [CEI's] electric system violates the 1961 NESC Code."

{¶ 33} According to Huberty, "the grandfather clause does not apply to new installations, reconstructions and extensions," all of which Huberty claimed CEI engaged in relative to the lines and poles at issue, and including an increase in the capacity of the transformers in 2011.

{¶ 34} Huberty also concluded that, "from his understanding," CEI's usage of the electrical system has changed from its original use of supplying electricity solely for Naiman "to running high voltage lines across [Naiman's] property to service Richmond Road and surrounding areas . . . up and down Richmond Road." Huberty also stated that it was "his understanding" that CEI did not have an easement.

{¶ 35} In opposition, CEI submitted the affidavit and expert reports[4] of Timothy Denzler. Denzler averred in his affidavit that he is a professional engineer who previously served as an engineering supervisor for CEI until his retirement at the end of August 2023. Denzler averred that he had over 42 years of experience as an electrical engineer and in interpreting and applying the NESC.

{¶ 36} According to Denzler, the subject distribution line has been used by CEI over the past 50 years to distribute electricity to its customers. The distribution line is connected to a CEI substation, which is not located on Naiman's property. Denzler averred that he reviewed CEI's business records, which showed that the voltage of the distribution line has not changed over the past 50 years.

---

[4] Denzler submitted two export reports, one dated March 2023, which was prepared for the dismissed case, and one dated January 2024, which was prepared for this case and updated specifically to respond to Huberty's report.

{¶ 37} Denzler's expert opinion contained the following conclusions. Denzler opined that all of the poles and wires for the distribution line were installed in compliance with the NESC that was in effect at the time of installation. Citing Rule 017 of the NESC, Denzler maintained that CEI would not be required to relocate any of the existing installations — including maintenance replacements — unless one of two exceptions applied. The first exception states that "for safety reasons, the administrative authority may require compliance with these rules." The second exception provides that "when a structure is replaced, the current requirements of Rule 238C shall be met, if applicable." PUCO is the administrative authority and Denzler averred that it has not required CEI to modify or relocate any of its existing installations. Further, according to Denzler, Rule 238C of the NESC relates only to certain communications equipment that is not on the CEI poles in question. Thus, Denzler maintained that neither exception applied.

{¶ 38} After review of CEI's business records, Denzler found that the first pole had never been replaced and the span of wires between the first and second poles had never been replaced. The transformers on the first pole were replaced in 2011, but the pole itself remained in the same location as when it was originally installed in 1969. The second pole was replaced in 2011 for maintenance.

{¶ 39} Denzler challenged Huberty's conclusions. Denzler maintained that Huberty did not have the expertise to make determinations about the NESC and that his conclusions were based on improper methodology that misinterpreted and misapplied the code. According to Denzler, determinations about compliance with

the NESC are "ordinarily" made by "qualified electrical engineers who have been trained and who are qualified to render expert opinions on this subject."

{¶ 40} Denzler believed Huberty's work as a former lineman for Cleveland Public Power, for the City of Cleveland, and in private practice did not give him the requisite expertise. Denzler noted that, in addition to not being an electrical engineer, during his deposition Huberty testified that he did not make NESC determinations when he worked for Cleveland Public Power. Further, when he worked in the private sector and for the City of Cleveland, he used the standards set forth in the National Electric Code, not the NESC.

{¶ 41} In regard to Huberty's conclusion that the clearances between Naiman's building and "spade and neutral conductors" on the first pole were in violation of the NESC, Denzler maintained that Huberty's conclusions "fail to take into account the voltage of each piece of equipment, which is a critical factor in making any NESC determinations." Specifically, Denzler opined that the "spade connector" "is a low-voltage connector that is less than 300 volts, and thus is not subject to the NESC clearances in the Sixth Edition of the NESC."

{¶ 42} Further, according to Denzler, the "neutral conductor" "is not an energized conductor because it is effectively grounded to the transformer ground and service ground wires, per industry standards." Denzler maintained that "there is no requirement for any clearances for a grounded neutral conductor in the Sixth Edition of the NESC" and even if the 2017 edition applied, CEI would be in

compliance, even by Huberty's measurement of a 5-feet horizontal clearance because the NESC clearance is 4.5 feet.

{¶ 43} Denzler explained that there are two types of NESC measurements — vertical and horizontal — and that a power line does not violate the NESC unless it is in violation of both the vertical and horizontal measurement requirements. Denzler concluded that in measuring the "clearance between the spade connector on one of the transformers and the roofline on the building, Huberty did not follow this methodology." Rather, according to Denzler, Huberty "stood on the roof and extended a hot stick to measure the distance between the spade connection and the building diagonally" and in using that measuring methodology "failed to take into account that the spade connector on the first pole is more than 8 feet higher than the roof of the building . . . ."

{¶ 44} CEI asked the trial court to exclude Huberty's expert report. The trial court denied CEI's request and considered Huberty's opinions. The court found Huberty's opinions were insufficient to create a genuine issue of material fact on Naiman's nuisance claims, however. Specifically, the trial court noted the following about Huberty and his opinions: (1) prior to being retained in this case, he had never interpreted the NESC in a professional capacity; (2) his "two page report relies largely on conclusory statements without explanation"; (3) his expert report did not cite to any NESC provisions; and (4) he did not "indicate the voltage of the lines at issue, either now or at any time in the past."

{¶ 45} In contrast, the trial court made the following findings relative to CEI's expert, Denzler, and his opinions:

> Timothy J. Denzler is a professional engineer with over 42 years of experience in electrical engineering [which] includes interpreting the NESC. Denzler's expert report is 15 pages replete with details and citations to the NESC. Denzler avers that the primary voltage of the distribution line is 12.2kV with a line to ground voltage of 7.62kV. Denzler avers that he reviewed the history of the line and found that the voltage has not changed over the past 50 years.

{¶ 46} It is well established that "unsupported legal conclusions are insufficient to establish the existence of a genuine issue of material fact." *Simpson v. Am. Internatl. Corp.*, 2014-Ohio-4840, ¶ 22 (8th Dist.), citing *Adkins v. Yamaha Motor Corp., U.S.A.*, 2014-Ohio-3747 ¶ 17 (4th Dist.), quoting *Moore v. Smith*, 2008-Ohio-7004, ¶ 15 (4th Dist.) ("'[C]onclusory affidavits that merely provide legal conclusions or unsupported factual assertions are not proper under Civ. R. 56(E)' and are insufficient to establish a genuine issue of material fact.").

{¶ 47} Upon review, we find that Huberty was not qualified to render expert opinions regarding alleged NESC violations. He specifically testified that he had never previously interpreted the NESC. Further, his opinions were merely conclusory and insufficient to create a genuine issue of material fact.

{¶ 48} Naiman contends that Denzler was biased because he was a current CEI employee at the time he offered his opinions. Denzler's affidavit is dated February 28, 2024, and in it, Denzler averred that he retired on August 31, 2023. His second expert report, in which he addresses Huberty's expert opinions, is dated January 16, 2024. Thus, both Denzler's affidavit and 2024 report postdate his

retirement from CEI; Naiman did not present evidence demonstrating that Denzler's assertion was untrue.

{¶ 49} On this record, Naiman failed to establish that there is a genuine issue of material fact as to whether CEI violated the NESC.

{¶ 50} Further, Naiman also failed to establish that the 2018 incident in and of itself constituted a nuisance. Naiman did not present evidence to create a genuine issue of material fact regarding the incident. Jack Naiman averred that "[i]n 2018, our worker's equipment came in conduct with the violative poles, lines and equipment and burned the roof and side of the building. We requested that Defendant relocate and remove their violative lines, poles and equipment, but Defendant refused." Jack admitted during his deposition testimony that he did not see the incident. The above-quoted averment was insufficient to create a genuine issue of material fact.

{¶ 51} Naiman also contends that if CEI had easements, it failed to maintain them. Naiman failed to make this argument at the trial-court level and did not present any evidence of a failure to maintain. It is well-established law that "a party cannot raise new arguments and legal issues for the first time on appeal, and that failure to raise an issue before the trial court waives that issue for appellate purposes." *Miller v. Cardinal Care Mgt.*, 2019-Ohio-2826, ¶ 23 (8th Dist.), citing *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017-Ohio-384, ¶ 28 (8th Dist.); *Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, 79 (1977) (Appellate courts "will not consider a question not presented, considered, or decided

by a lower court."). Thus, we will not consider this argument for the first time on appeal.

{¶ 52} On this record, Naiman's first, second, and third assignments of error are overruled.

**Eminent Domain**

{¶ 53} In its fourth assignment of error, Naiman contends that CEI, a public utility, cannot have a prescriptive easement because it has eminent domain authority. Naiman cites *Ohio Power Co. v. Burns*, 2022-Ohio-4713. We are not persuaded. *Burns* considered the presumptions a public utility is entitled to when asserting that a taking of property is necessary. *Id.* at ¶ 20. The Court considered what "appropriation" means and whether it included "individual easement terms." *Id.* at ¶ 21. The *Burns* Court ultimately held that appropriation "means the appropriation of the easement rights sought by the petition." *Id.* The Court did not hold that a public utility cannot have a prescriptive easement because of its eminent domain authority. Indeed, courts have upheld public utilities acquiring prescriptive easements. *See, e.g., Katz v. Metro. Sewer Dist.*, 117 Ohio App.3d 584 (1st Dist. 1997) (upholding a prescriptive easement in favor of a sewer district even though the sewer line was not visible to the property owners); *Olive Oil, L.L.C. v. Cleveland Elec. Illum. Co.*, 2021-Ohio-2309 (8th Dist.) (remanding case for a determination of whether CEI had acquired a prescriptive easement over landowner's property).

{¶ 54} Naiman's fourth assignment of error is overruled.

**Jack Naiman's Affidavit**

**{¶ 55}** In its fifth and final assignment of error, Naiman contends that the trial court erred in disregarding portions of Jack Naiman's affidavit. The trial court ruled that it was disregarding paragraphs five through nine of the affidavit, finding that the "critical averments [in those paragraphs] are not based upon personal knowledge."

**{¶ 56}** Evidence submitted in support of or opposition to a summary judgment motion must comply with Civ.R. 56(E), which provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence[.]" Thus, "[s]tatements contained in affidavits must be based on personal knowledge and cannot be legal conclusions." *Brannon v. Rinzler*, 77 Ohio App.3d 749, 756 (2d Dist. 1991).

**{¶ 57}** The averments the trial court disregarded were as follows:

5. Defendant has installed and continues to install, reconstruct, extend, upgrade and modify power lines, power line poles, equipment and transformers on the Property, some of which are directly adjacent to the buildings on the Property.

6. Defendant has no easement or right to run lines or equipment across Plaintiff's property that do not service Plaintiff's property.

7. Initially, in the 1960s there was a single pole with equipment and lines that served only Plaintiff's building.

8. At some point thereafter, with no easement, right or ability to do so, Defendant added poles, lines and equipment across Plaintiff's property running power from Defendant's substation behind the building across Plaintiff's property out to Richmond Road. Defendant reconstructed and extended the poles, lines and equipment on our property for a use never intended — to run Defendant's lines, equipment and poles across

our property as a distribution hub. Defendant has no easement or right use Plaintiff's property in this manner.

9. The lines, poles, equipment, and transformers have been reconstructed, extended, modified and upgraded through the years including without limitation in 1971, 1983 and 2011.

{¶ 58} The trial court properly disregarded the above-quoted paragraphs of Jack Naiman's affidavit because he either did not establish a foundation of personal knowledge or made conclusory legal statements, and in some instances, contradicted his own deposition testimony.

{¶ 59} The fifth assignment of error is overruled.

{¶ 60} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)